IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 8, 2016

**STATE OF TENNESSEE v. JEFFERY GORDON LAYHEW**

**Appeal from the Criminal Court for Davidson County**
**Nos. 2015-C-1731, 2016-I-135     Amanda McClendon, Judge**

**No. M2016-00725-CCA-R3-CD**

The Defendant, Jeffrey Gordon Layhew, pleaded guilty to leaving the scene of an accident and Driving Under the Influence ("DUI"), offenses which took place on different dates. For the leaving the scene of an accident conviction, the trial court sentenced him to eleven months and twenty-nine days, to be served at 100%. For the DUI conviction, the trial court sentenced the Defendant to eleven months and twenty-nine days, to be served at 100%. The trial court ordered that the sentences be served consecutively for a total effective sentence of two years, at 100%. On appeal, the Defendant contends that the trial court erred when it sentenced him to serve maximum consecutive misdemeanor sentences and when it failed to set a specific amount for his restitution. The State agrees and asks this Court to remand the case to the trial court for resentencing. After review, we agree with the parties that the trial court erred when it failed to make findings to support consecutive sentences and when it did not set a specific amount for restitution. Accordingly, we vacate the Defendant's sentences and remand the case to the trial court for resentencing.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Vacated and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ALAN E. GLENN, J., joined.

Joshua D. Arters, Brentwood, Tennessee, for the appellant, Jeffery Gordon Layhew.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Glenn R. Funk, District Attorney General; and Kyle S. Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant hitting a bicycle ridden by Floyd Cassista, the victim, at approximately 6:00 p.m. on December 14, 2014. While the Defendant was on bail for this offense, he was arrested on two separate occasions for DUI. Also while on bail, the Defendant was subject to having an alcohol ankle monitoring device, SCRAM, on his ankle. He cut the SCRAM alcohol monitor off his ankle on two separate occasions.

## A. Procedural History and Guilty Plea Hearing

The record shows that the Davidson County Grand Jury indicted the Defendant in case number 2015-C-1731, for leaving the scene of an accident on or about December 13, 2014. The indictment alleged that the Defendant:

> Was the driver of a motor vehicle, and was involved in an accident which resulted in the injury of Floyd Cassista, and further charges that this accident occurred upon the premises of a shopping center, trailer park, apartment complex, or other premises generally frequented by the public at large, a street, alley or public road or highway of the State of Tennessee, and further charges that [the Defendant] unlawfully did leave he scene of this accident without first fulfilling the requirements of Tennessee Code Annotated § 55-10-103, to wit: give his name, and address, and the registration number of the motor vehicle he was driving, and render reasonable assistance to any person injured in the accident, all in violation of Tennessee Code Annotated § 55-10-101, and against the peace and dignity of the State of Tennessee.

On August 13, 2015, the trial court entered an order to increase bail. The order stated that the Defendant would be subject to wearing a SCRAM, which is an ankle monitoring alcohol device.

On January 4, 2016, the Defendant's probation officer filed an affidavit swearing that the Defendant had cut off his SCRAM monitor. The Defendant told the officer that he had done so by accident, so she replaced the monitor. He then cut it off a second time, telling her that it was bothering him. The officer stated in the affidavit that the Defendant had removed his monitor twice "within a couple of weeks." In response the trial court revoked the Defendant's bond.

On February 10, 2016, the Defendant agreed to allow the District Attorney to proceed against him by criminal information only on the charge that he committed DUI on April 2, 2015. The Criminal Information identifies the case number of that charge as 2016-I-135.

2

On March 10, 2016, the Defendant pleaded guilty in case number 2015-C-1731 to leaving the scene of an accident, a Class A misdemeanor, and agreed to allow the trial court to determine his sentence. On that same date, the Defendant entered a plea of guilty in case number 2016-I-135 to DUI, a Class A misdemeanor. The Defendant again agreed to allow the trial court to determine his sentence.

At the sentencing hearing, the State entered a presentence report. The report indicated that the Defendant had also been arrested for DUI on another occasion and had a probation violation related to that conviction in January 2016. The victim, Floyd Cassista, III, testified about the circumstances surrounding the Defendant's conviction for leaving the scene of an accident. He said that he was injured when the Defendant, who was driving a Ford F-150, hit him while he was riding a bicycle home from work. Mr. Cassista said that, as a result of the accident, he suffered broken ribs, road burn, a traumatic injury, and was missing a portion of his left ear. He was hospitalized for more than three weeks. Mr. Cassista said he still was suffering the effects of his brain injury and was still unable to return to work at Lowe's Garden Center, a job that he was happy with. He said that, while he had applied for disability, his request had been repeatedly denied.

Mr. Cassista noted that the Defendant had "gotten himself back in trouble since the accident," proving that he did not learn anything from the accident and that the Defendant cannot be trusted on the road. He noted that the Defendant hit him and then left him for dead. Mr. Cassista asked that the trial court sentence the Defendant to the maximum.

During cross-examination, Mr. Cassista testified that he was hit between 5:45 and 6:00 p.m. on December 14, and that it was dark at the time of the accident. He said that he had lights on his bicycle but that they were not working at the time of the accident.

The Defendant testified that he was fifty-eight at the time of sentencing and that he had a high school education. He served three years in the military following high school, after which he was honorably discharged. The Defendant said he then went to work for Nashville Electric Service, and he worked there for thirty-four years before retiring in 2012.

The Defendant said that he suffered from a heart condition, which the doctor described to him as a "sluggish heart." He said that his heart pumped only about eighteen to twenty percent of what it was supposed to pump. The Defendant said that he also suffered from anxiety and panic attacks, conditions for which he was medicated.

3

The Defendant testified that he lived with his sister in a house that he owned. He discussed his previous convictions, saying that he had been charged in 2005 with public intoxication, had juvenile charges, and had charges related to an accident in 1981.

About the accident in this case, the Defendant said that it occurred while he was coming home from a friend's house. He had not been drinking alcohol while there but had been sick. He had a rising temperature, resulting in a fever. He said his blood pressure was "up" in part because he had not taken any of his prescribed medications for several days. The Defendant said that he was traveling home to get his medications and that both his nerves and blood pressure were "pretty bad at the time." The Defendant testified that he was driving in the right lane at a normal speed. He had traveled this route daily for almost forty years. He did not see any cars or trucks, and then he saw a "flash in front of [his] windshield." He had no time to brake but jerked the wheel to the right and went off the road. He heard the sound of his truck hitting a tree, so he jerked the truck back to the left back onto the roadway. The Defendant said he was scared and continued down the street to where he lived, just two miles away. He said that as he was driving he realized that the "flash" that he saw was the frame of a bicycle and "somebody's head turning around looking."

The Defendant said that, at that point, his nerves were already shot and his blood pressure high. He saw headlights in his rearview mirror, and he assumed that the headlights were from a car that was following him. He said that he made it to the stop sign. He assumed that, since his license tag was on this truck, the police would be able to find him. The Defendant said he went home, took his medicine, sat on his bed, and smoked a cigarette until police arrived.

The Defendant said that he left the scene of the accident because he was scared and did not realize what had happened. He said that police officers arrived at his home shortly after he did. His son, who was at the home, answered the door for them, and they came and asked him questions about the accident. The Defendant said that he responded truthfully to their questions and cooperated fully.

During cross-examination, the Defendant admitted that, after a car accident in 1983, he was arrested and convicted for DUI and leaving the scene of an accident. The Defendant agreed that, after the accident in this case, he went home and fell asleep in his bed. He further agreed that, while on bail in this case, he was arrested on two separate occasions for DUI and was ordered to wear a SCRAM monitor. He admitted that he cut the SCRAM monitor off twice. He explained that he cut it off because he had to pay to wear the bracelet, and he owed the company $1,207. He cut off the bracelet, he said, so that he would no longer accrue debt to the company.

4

The Defendant agreed that, when he was arrested in April for DUI, he admitted to police that, before driving, he had consumed three to four beers at home and then three to four more beers and a mixed drink at the bar. When he was arrested for DUI in June, he told the police that he had consumed four to seven beers and a significant amount of whiskey before driving. The Defendant said that, while he had a drinking problem in 1983, he no longer had a drinking problem.

During redirect examination, the Defendant expressed remorse for what he had done.

The Defendant's probation officer, Stephanie Krivcher, testified that her first meeting with the Defendant did not go well. During that visit, the Defendant threw a pen and a piece of paper. She said that the next visit she had with him was while he was in custody and it went "much, much better." The two met for over two hours, during which time they communicated well. Ms. Krivcher said that the Defendant showed emotion during their visit, crying a little, about what had happened.

Rosemary Davenport, the Defendant's younger sister, testified that she lived with the Defendant. She said that she would help him meet the requirements of probation, if the trial court was inclined to grant him probation.

Based upon this evidence the trial court found:

I'm going to give him the maximum sentences consecutively. I see a trend here. I see great concern actually, and I was present in the courtroom when he got agitated at Ms. Krivcher. I saw him get agitated at you. He has a temper problem and maybe it's because he's gone through a divorce and he's not with someone. I noticed there was a thirty-year period he didn't have any problems, but it looks like he's going through a flurry of them now. So, that's going to be what I order.

Now, after that, I don't know to what extent I can have probation after those two consecutive terms, but – because I've never had – I have actually never wanted to do a maximum sentence like this before, but I do with this gentleman.

. . . .

I want the restitution . . . to be made for the ambulance bill. A guide for the probation officer, and I'm hoping it's Ms. Krivcher, to get some sort of documentation on the ambulance bill and also on loss of income for two

5

months while he was hospitalized. I think he should pay that. So I'm going to do a minimum on the DUI because that's literally like I would rather it go to the victim. So that will be $350 on the DUI and on the leaving the scene, $350 again.

The trial court clarified that she did not want the Defendant eligible for release until he had served 100% of his sentence.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it ordered him to serve the maximum sentences at 100% and ordered those sentences to run consecutively. Further, he asserts that the trial court erred when it failed to set a specific amount of restitution. The State concedes that the trial court erred.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302 (2014), which provides that the trial court shall impose a specific sentence consistent with the purposes and principles of the sentencing statutes. *See State v. Palmer,* 902 S.W.2d 391, 394 (Tenn. 1995). While a separate sentencing hearing is not mandatory for misdemeanor sentencing, the trial court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. T.C.A. § 40-35-302(a). The trial court must sentence the misdemeanor offender to a determinate number of hours, days, or months, and fix a percentage of that sentence for the offender to serve, after which the offender becomes eligible for rehabilitative programs. T.C.A. § 40-35-302(d). In determining the percentage of the sentence, the trial court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. *Id.* The misdemeanor sentencing statute grants the trial court the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. T.C.A. § 40-35-302(e).

When an accused challenges the length and manner of service of a sentence, this Court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise,* 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." *State v. Caudle,* 388 S.W.3d 273, 278–79 (Tenn. 2012). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover,

under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter,* 254 S.W.3d at 346.

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401 (2014), *Sentencing Comm'n Cmts.*; *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991). We review all sentencing decisions, including misdemeanor sentencing decisions, pursuant to an abuse of discretion standard. *See e.g., State v. King* 432 S.W.3d 316, 324 (Tenn. 2012). We note that the supreme court has previously held that the sentencing court is entitled to considerable latitude in misdemeanor sentencing. *State v. Johnson,* 15 S.W.3d 515, 518 (Tenn. Crim. App. 1998) (citing *State v. Troutman,* 979 S.W.2d 271, 273 (Tenn. 1998)).

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *State v. Grear,* 568 S.W.2d 285, 286 (Tenn. 1978). A trial court should base its decision regarding any sentence involving confinement on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1) (2014). Furthermore, the trial court should examine the defendant's potential for rehabilitation or lack thereof when determining whether an alternative sentence is appropriate. T.C.A. § 40-35-103(5).

The Defendant first contends that the trial court erred when it sentenced him to the maximum sentence for his convictions. We cannot agree. The trial court found that the Defendant had recently been in trouble with the law on several occasions and that he had a problem with his temper, having witnessed the Defendant become agitated at his probation officer in court. The record evinces that, while on bond for these offenses, the Defendant twice cut off his SCRAM alcohol monitoring bracelet and was arrested on multiple occasions for DUI. The Defendant denied having a drinking problem at the time of the hearing, admitting that he had a drinking problem in 1983 when he left the scene of an accident he committed while drinking and driving. The trial judge expressed concern about the Defendant's recent behavior, indicating that he was putting others at risk.

7

Pursuant to our standard of review, the judge did not err when she ordered the Defendant to serve the maximum sentences.

The Defendant next contends that the trial court erred when it ordered him to serve his sentences consecutively without finding any of the applicable factors in Tennessee Code Annotated section 40-35-115(b) to support such a sentence. This Code section states:

> (b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:
>
> > (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
> > (2) The defendant is an offender whose record of criminal activity is extensive;
> > (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> > (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;
> > (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
> > (6) The defendant is sentenced for an offense committed while on probation; or
> > (7) The defendant is sentenced for criminal contempt.
>
> . . . .
>
> (d) Sentences shall be ordered to run concurrently if the criteria noted in subsection (b) are not met, unless consecutive sentences are

8

specifically required by statute or the Tennessee Rules of Criminal Procedure.

T.C.A. § 40-35-115.

It is unclear from the record the basis for the trial court's imposition of consecutive sentences. We are therefore constrained to remand the case for resentencing at which time the trial court shall enter a basis upon which it ordered consecutive sentencing. Upon remand, the trial court should also reexamine the eligibility date for rehabilitative programs, as the maximum for misdemeanor sentences is seventy-five percent, see Tennessee Code Annotated section 40-35-302, and set a specific amount for restitution and a timeframe for its payment.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we vacate the Defendant's sentence, and we remand the case to the trial court for resentencing.

_____
ROBERT W. WEDEMEYER, JUDGE

9